IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | |
|---|---|
| OLD REPUBLIC NATIONAL TITLE INSURANCE COMPANY,<br><br>　　　　　　　　Plaintiff<br><br>vs.<br><br>STUDSTILL & PERRY, LLP,<br><br>　　　　　　　　Defendant. | CIVIL ACTION<br><br>FILE NO. _____ |

## COMPLAINT

COMES NOW Old Republic National Title Insurance Company (hereinafter "Old Republic") and does hereby file this, its Complaint for damages against Defendant Studstill & Perry, LLP, respectfully showing as follows:

### THE PARTIES

1.

Old Republic is a foreign corporation engaged in the business of issuing title insurance policies. Its principal office is 400 Second Avenue South, Minneapolis, Minnesota. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1332. Complete diversity exists between Old Republic and the Defendant. The amount in controversy exceeds $75,000.00, exclusive of interests and costs.

2.

Defendant Studstill & Perry, LLP (hereinafter "the Firm") is a limited liability partnership. The Firm is subject to the jurisdiction of this Court and venue is proper. Service

can be had upon the Firm by service upon Daniel L. Studstill at 110 Dogwood Drive, Nashville, Georgia 31639.

## BACKGROUND ALLEGATIONS

3.

The Firm entered into an Agreement For Appointment of Policy Issuing Agent For Old Republic National Title Insurance Company on May 14, 2006 (hereinafter referred to as the "Agency Agreement"). A true and correct copy of the Agency Agreement is attached hereto as Exhibit "A". In relevant part, the Agency Agreement provides as follows:

### III. DUTIES OF AGENT

Agent shall:

A. Receive and process applications for title insurance and issue policies in a timely, prudent and ethical manner with due regard to recognized title insurance underwriting practices and in accordance with the rules and instructions of Insurer, as well as in conformity with state and local laws and practice;

. . .

### VII. RESPONSIBILITY FOR LOSS

As between Insurer and Agent, responsibility for loss (which term shall include payments to Insured and third party claimants, attorney's fees and all other costs incurred in investigation of claims, negotiation of settlement and litigation) arising from the title insurance business conducted pursuant to this agreement, shall be as follows:

1. Agent is responsible for the following losses:

   . . .

   B. Intentional or negligent failure of Agent to comply with the terms and requirements of this Agreement or of the rules, regulations or instructions given to Agent by Insurer;

   . . .

   E. Negligent errors or omissions in the search, or examination of title, in the preparation of title insurance forms or in other procedures involved in processing an application for title insurance.

. . .

VIII. PREPARATION OF POLICIES AND COMMITMENTS

Agent will show as exceptions to coverage all matters such as taxes, encumbrances, liens, restrictions, easements and any other matters which constitute a defect or question as to the validity and/or marketability of the title being insured, of which the Agent has knowledge, including those matters disclosed by a proper search of the records, an opinion of title and/or an inspection of the insured land.

4.

On January 1, 1999, Rinker Materials Corporation entered into a mining lease with GHM Rock & Sand, Inc. (See attached hereto a true and correct copy of the "Rinker Lease" attached hereto as Exhibit "B".)

5.

The Firm examined title and certified to Old Republic that GHM Real Estate of Florida, Inc. and GHM Rock & Sand, Inc. were the holders of title of the subject property. The Firm thereafter certified that Rinker Materials Corporation was entitled to the leasehold estate pursuant to the lease agreement.

6.

Pursuant to its Agency Agreement with Old Republic, the Firm issued a policy of title insurance on December 31, 1998. (See attached hereto as Exhibit "C" a true and correct copy of the Policy.) Pursuant to the terms of the Policy, Rinker Materials Corporation was identified as the Insured. The Policy provided that the title to the leasehold estate was vested in Rinker Materials Corporation. In preparation of the Policy, the Firm set forth certain exclusions from coverage found in Schedule B to the Policy.

7.

Pursuant to the terms of the Agency Agreement, the Firm was required to "show as exceptions to coverage all matters such as taxes, encumbrances, liens, restrictions, easements and

any other matters which constitute a defect or question as to the validity and/or marketability of the title being insured, of which the Agent has knowledge, including those matters disclosed by proper search of the records, an opinion of title and/or an inspection of the insured land."

8.

In the Firm's possession at the time of the issuance of the Policy was that certain deed from Altamaha Land Company to James E. Stewart, Jr., Robert B. Zachry, Jr., Earl A. Spence, Sr., William H. Cox, Jack Williams, Jr., William H. Hopkins, Jr., C. E. Layton, Jr., John H. King, III, Herbert Bradshaw, Jr., William F. Varn and Nell Hood, Allen Churchwell, H.J. WEstberry, Jr., Alton Hopkins, William Versen and John Hodges dated October 31, 1967, recorded in Deed Book 35, Page 294, conveying an undivided ½ interest in the oils, gases and minerals to "the rents, issues, profits and royalties flowing, produced or derived therefrom, unto Grantees, their heirs and assigns, for and during the full end term of 50 years . . ." (hereinafter referred to as the "Altamaha Deed").

9.

Despite being in possession and having actual knowledge of the Altamaha Deed, the Firm did not set out the Altamaha Deed as an exception under the terms of the Policy as required by the Agency Agreement.

10.

Simex Construction Materials of Florida, LLC became successor-in-interest to Rinker Materials Corporation and Rinker Materials of Florida, Inc. to the Rinker Lease. Pursuant to the Rinker Lease, Simex assumed all of GHM's rights to all sand, gravel, dirt, fill, clay and construction-related aggregates (hereinafter referred to as the "minerals") on, within or under the

real estate described in the Lease. Thereafter, Simex engaged in conducting mining operations for minerals on the land.

11.

Thereafter, the parties to the Altamaha Deed, named above, brought suit against Rinker Materials of Florida, asserting their right, claim and interest under the Altamaha Deed to those certain profits derived by Simex and Rinker as a result of their mining operation. Said action is known as *Alton H. Hopkins, et al. v. Rinker Materials of Florida, Inc.*, Civil Action File No. 2007CV128 (hereinafter the "Lawsuit").

12.

Plaintiffs in the underlying Lawsuit sought, among other equitable relief, damages in an amount in excess of $7 million.

13.

Following extensive litigation, the parties to the underlying Lawsuit were able to reach a negotiated settlement whereby Old Republic, on behalf of its Insured, agreed to pay to the Plaintiffs in the underlying Lawsuit the amount of $1 million.

14.

As a result of the Firm's failure to comply with the terms and requirements of the Agency Agreement, Old Republic incurred costs in the defense and investigation of the matter in an amount in excess of $325,000.00, which amount shall be proven at trial.

## COUNT I: INDEMNIFICATION

15.

Old Republic incorporates its allegations above as if stated herein verbatim.

16.

Pursuant to the terms of the Agency Agreement, the Firm owes Old Republic an express duty of indemnification. Old Republic relied upon the certification of title in preparation of the Title Policy, including the schedule of exclusions, in regard to the leasehold transaction. The Agency Agreement expressly required the Firm to "show as exceptions to coverage all matters such as taxes, encumbrances, liens, restrictions, easements and other matters which constitute a defect or question as to the validity and/or marketability of title being insured of which the Agent has knowledge, including those matters disclosed by a proper search of the records, an opinion of title, or an inspection of the insured land."

17.

Pursuant to the terms of the Agency Agreement, the Firm is responsible for loss arising from the title insurance business conducted pursuant to the agreement, including preparation of the title insurance forms and other procedures involved in processing an application for title insurance. Additionally, the Firm is responsible for the loss resulting from its failure to comply with the terms and requirements of the Agency Agreement or the rules, regulations or instructions given to Agent by Insurer.

18.

The Firm's failure to disclose the existence of the Altamaha Deed and its failure to set forth the existence of such reservation of rights was a breach of the duty of care set forth under the Agency Agreement and resulted in the loss suffered by Old Republic in the amount not less than $1,325,000.00, reflecting those amounts paid for the resolution of the dispute and costs incurred in the investigation and defense of the underlying Lawsuit. (See Affidavit of John E. Robinson, attached hereto as Exhibit "D".)

19.

Demand has been made upon the Firm to comply with its duty of indemnity, and such demand has been wrongfully denied. Pursuant to the terms of the contract, Old Republic is entitled to be indemnified by the Firm in an amount not less than $1,325,000.00.

## COUNT II: BREACH OF CONTRACT

20.

Old Republic incorporates the allegations stated above as if stated herein verbatim.

21.

The Firm breached the Agency Agreement by failing to identify those defects giving rise to the underlying Lawsuit, including but not limited to the Altamaha Deed.

22.

As a result of the Firm's breach of the Agency Agreement, Old Republic suffered a loss in an amount not less than $1,325,000.00, including those costs incurred in the settlement of the underlying Lawsuit and its investigation and defense of the claim.

## COUNT III: ATTORNEY'S FEES

23.

Old Republic incorporates the allegations stated above as if stated herein verbatim.

24.

Although repeated demands have been made to the Firm, it has refused to comply with the Agency Agreement and to accept responsibility for the loss suffered by Old Republic as a result of the Firm's breach. Therefore, the Firm has been stubbornly litigious, has acted in bad faith, and has caused Old Republic unnecessary trouble and expense in having to enforce the Agreement. Old Republic is entitled to recover all expenses incurred pursuant to O.C.G.A. § 13-

6-11, in addition to those express provisions regarding indemnification as contained in the Agency Agreement.

WHEREFORE, Old Republic prays for the following relief:

(a) That the Firm indemnify Old Republic in an amount not less than $1,325,000.00;

(b) That Old Republic be awarded the sum of no less than $1,325,000.00 due to the breach of contract;

(c) That Old Republic be awarded all costs of this action, including reasonable attorney's fees pursuant to O.C.G.A. § 13-6-11 due to the Firm's failure to pay monies owed to Old Republic; and

(d) That Old Republic have such other and further relief as this Court deems just and proper.

This 29th day of June 2012.

WEISSMAN, NOWACK, CURRY & WILCO, P.C.

3500 Lenox Road, 4th Floor
One Alliance Center
Atlanta, Georgia 30326
404-926-4500
jeffschneider@wncwlaw.com

/s/ Jeffrey H. Schneider
Jeffrey H. Schneider
Georgia Bar No. 629545
Attorney for Plaintiff

100194100; 5453.955