# EXHIBIT "A"

## Agreement For Appointment of Policy Issuing Agent For Old Republic National Title Insurance Company As Amended - May 14, 2006

### "Agency Agreement"

AMENDMENT NO. **3** TO AGREEMENT FOR

# APPOINTMENT OF POLICY ISSUING AGENT FOR
## OLD REPUBLIC NATIONAL TITLE INSURANCE COMPANY

Attached and made a part of Agency Agreement between Moore & Studstill, PC and Old Republic National Title Insurance Company dated August 3, 1993, as amended.

Exhibit "A" is hereby amended to add the following validating officer(s):

W. Cavan Perry

Exhibit "A" is hereby amended to delete the following validating officer(s):

Mitchell O. Moore

The name of the agency shall be changed to read:

Studstill & Perry, LLP

Except as amended herein the said Agency Agreement remains in full force and effect.

Dated this 14th day of May, 2006.

STUDSTILL & PERRY, LLP                    OLD REPUBLIC NATIONAL TITLE
                                          INSURANCE COMPANY

By: _____            By: _____
    Daniel L. Studstill                       Sharon Baker
                                              Asst. Secretary

A 10035

Received Time May. 15.   2:30PM
RECEIVED TIME MAY. 15.   3:50PM

AMENDMENT NO. __2__ TO AGREEMENT FOR

## APPOINTMENT OF POLICY ISSUING AGENT FOR

*OLD REPUBLIC NATIONAL TITLE INSURANCE COMPANY*

Attached to and made a part of the Agency Agreement between Moore & Studstill, P.C. and Old Republic National Title Insurance Company dated August 6, 1993, as amended.

1.  Paragraph VI. AGENT'S COMMISSIONS AND REPORTING SCHEDULE is hereby amended as follows:

    (a)  Agent will remit to Insurer 30 percent of the title insurance rates.  This will become effective April 1, 2002.

Except as amended herein, said Agency Agreement remains in full force and effect.

This 29th day of March, 2002.

MOORE & STUDSTILL, P.C.

OLD REPUBLIC NATIONAL TITLE
INSURANCE COMPANY

By: _____
Mitchell O. Moore

By: _____
Daniel L. Studstill

By: _____
Jane R. McHenry
Its:    Vice President


A 10035

Amendment No. 1

Attached and made a part of Agency Agreement between Moore & Studstill, P.C. and Old Republic National Title Insurance Company dated August 6, 1993.

Item X. INSURANCE, is hereby amended by changing the policy deductible to $10,000.00.

Except as amended herein the said Agency Agreement remains in full force and effect.

Dated this 10th day May, 1994.

MOORE & STUDSTILL

By: Mitchell O. Moore

By: Daniel L. Studstill

OLD REPUBLIC NATIONAL TITLE INSURANCE COMPANY

By: Walter E. Davis

Its: Vice President

AGREEMENT FOR APPOINTMENT OF POLICY ISSUING AGENT
FOR OLD REPUBLIC NATIONAL TITLE INSURANCE COMPANY

THIS AGREEMENT, made and entered into this ___6th___ day of ____August____, 19_93_ by and between Old Republic National Title Insurance Company, a Minnesota corporation, hereinafter referred to as "Insurer" and _____Moore & Studstill, PC_____ of the city/town of __Nashville__, state of ____Georgia____, hereinafter referred to as "Agent";

IN CONSIDERATION of the mutual benefits accruing, and subject to the terms and conditions hereof, the parties hereto agree as follows:

### I. APPOINTMENT OF AGENT

Insurer appoints Agent a policy issuing agent for Insurer for the purpose of signing, countersigning and issuing commitments, binders, title reports, certificates, guarantees, title insurance policies, endorsements and other agreements under which Insurer assumes liability for the condition of title (hereinafter collectively referred to as "title insurance forms"), covering real estate located in the following county or counties:

in the state of Georgia.                                 All

### II. LIMITATIONS ON AGENT'S AUTHORITY

Agent shall not, without written approval from Insurer:

A.    Commit Insurer to a risk in excess of $ 500,000.00  ;
B.    Commit Insurer to a risk which it has, by its rules, determined to be an extraordinary or extra hazardous risk, or which Agent knows to be based upon a disputed title;
C.    Commit Insurer to a risk which, by its rules, instructions or manuals, requires prior approval by Insurer;
D.    Use title insurance forms other than those supplied by Insurer or alter any title insurance forms supplied by Insurer;
E.    Administer or adjust any claim of loss for which Insurer may become liable;
F.    Accept service of legal process on behalf of Insurer, unless required by state law, in which event Agent shall immediately forward to Insurer all documents served;
G.    Incur bills or debts chargeable to Insurer;
H.    Use the names "Old Republic National Title Insurance Company", "Old Republic Title" or any derivative thereof in any of Agent's advertising or as a part of Agent's name and shall cease any and all use of such names upon termination of this agreement; or
I.    Issue title insurance forms covering any title in which Agent, its officers, directors, employees, partner or the attorney furnishing an opinion of title, have any interest, direct or indirect.

### III. DUTIES OF AGENT

Agent shall:

A.    Receive and process applications for title insurance and issue policies in a timely, prudent and ethical manner with due regard to recognized title insurance underwriting practices and in accordance with the rules and instructions of Insurer, as well as in conformity with state and local laws and practice;
B.    Maintain and preserve, in a separate file on each order for title insurance placed with Agent, a copy of the title insurance forms issued in that transaction, and all supporting documents on which the determination of insurability is made, including, but not limited to, affidavits, lien waivers, survey plats, searches, examinations and work sheets;
C.    Maintain an accurate register of title insurance forms;
D.    Assume full responsibility for the collection of all premiums, fees and charges attributable to the issuance of title insurance forms hereunder;
E.    Keep safely in an account separate from Agent's operating accounts all funds received by Agent from any source in connection with transactions which the Insurer's policy is involved, disburse said funds only for the purposes for which the same were entrusted, and reconcile all such accounts not less frequently than monthly;
F.    Comply with all statutes and governmental rules and regulations relating to the licensing and operation of Agent's business; and
G.    Notify Insurer immediately if Agent, for any reason, is unable to carry on the business of issuing Insurer's title insurance forms, or if there is a change in the management or ownership of Agent's business.

$\mathcal{GLS}$

IV. DUTIES OF INSURER

Insurer shall:

A.  Furnish Agent with title insurance forms and forms for the accounting of same;
B.  Furnish Agent with rules and instructions regarding procedures for issuing title insurance forms;
C.  Determine all risk assumption questions submitted by Agent; and
D.  Comply with all statutes and governmental rules and regulations relating to the licensing, taxation and the operation of Insurer's business.

V. TITLE INSURANCE RATES

Agent shall be supplied with Insurer's title insurance rate schedules and shall quote, charge and collect said rates. Insurer retains the exclusive right to revise title insurance rates by reducing or increasing any specific rate, a category of rates or all rates, on a temporary or permanent basis, or by adding or deleting any rate or rates. Agent will be notified of any such revision.

VI. AGENT'S COMMISSIONS AND REPORTING SCHEDULE

Agent shall remit to Insurer __40__ percent of the title insurance rates specified in section V. above as the underwriting fee for Insurer's assumption of the risk except that Insurer may require additional premium on commercial real estate transactions where the amount of insurance is in excess of $5,000,000. Agent shall not be entitled to retain any portion of a premium charged for extra hazardous risks as defined by Insurer. In cases where, for any reason, reinsurance or coinsurance is purchased by Insurer, for purpose of determining Agent's retention, the cost of such reinsurance or coinsurance shall be deducted from the title insurance rates specified in section V. above prior to the division of said rate between Agent and Insurer. The amount deducted to cover the cost of reinsurance or coinsurance shall be remitted to Insurer.

On a monthly basis, Agent agrees to report to Insurer, using a policy register in a form approved by Insurer, all title insurance policies, endorsements and any other title insurance forms that Insurer may require to be reported, which have been issued since the previous report, and attach to the report a copy of each title insurance form covered by the report. Agent further agrees to remit to Insurer, by attaching to the above report, all amounts due Insurer under this agreement. The report and remittance will be due the Insurer on or before the 10th day of the second month following the closing date wherein the title insurance liability was created. All title insurance forms submitted to Insurer as required herein shall become the property of Insurer.

All amounts due Insurer pursuant to this agreement shall, upon receipt by Agent, be considered the property of Insurer and shall be held in trust by Agent for the benefit of Insurer in a bank account separate and apart from Agent's personal and operating accounts until such time said amounts are paid over to Insurer.

VII. RESPONSIBILITY FOR LOSS

As between Insurer and Agent, responsibility for loss (which term shall include payments to insured and third party claimants, attorney's fees and all other costs incurred in investigation of claims, negotiation of settlements and litigation) arising from the title insurance business conducted pursuant to this agreement, shall be as follows:

1.  Agent is responsible for the following losses:

    A.  Defalcation, fraud or dishonesty on the part of Agent or any of its officers, directors, employees or partners, associates or members of Agent;
    B.  Intentional or negligent failure of Agent to comply with the terms and requirements of this Agreement or of the rules, regulations or instructions given to Agent by Insurer;
    C.  Intentional omission from commitments or policies of reference to encumbrances or title defects disclosed by the application, by the Agent's search and examination of title, by an approved examiner's report, or certification of title, or which were otherwise known to the Agent at the time of issuance of insurance;
    D.  The improper closing or attempted closing by the Agent including but not limited to (1) loss or misapplication of customer funds, documents or other things of value entrusted Agent in any custodial or fiduciary capacity resulting in loss to Insurer, and/or (2) failure to disburse properly or close in accordance with escrow or closing instructions, and/or (3) misappropriation of escrow or closing funds by Agent, its officers or employees; and
    E.  Negligent errors or omissions in the search, or examination of title, in the preparation of title insurance forms or in other procedures involved in processing an application for title insurance.

DCS

2.  Insurer is responsible for all other losses resulting from claims covered under Insurer's title insurance forms issued by Agent.

3.  In the process of responding to claims of loss, Insurer shall have the exclusive right to adjust, pay or compromise all claims and the sole discretion to commence, defend against or settle legal proceedings in connection therewith.

## VIII. PREPARATION OF POLICIES AND COMMITMENTS

Agent will show as exceptions to coverage all matters such as taxes, encumbrances, liens, restrictions, easements and any other matters which constitute a defect or question as to the validity and/or marketability of the title being insured, of which the Agent has knowledge, including those matters disclosed by a proper search of the records, an opinion of title and/or an inspection of the insured land.

## IX. CLAIMS

If a claim is made to Agent under any of Insurer's title insurance forms which Agent has issued or if Agent becomes aware of any circumstances which may give rise to a claim under any such exposure, Agent agrees to immediately notify Insurer at its office at 400 Second Avenue South, Minneapolis, Minnesota 55401 (Attn: Claims Department). Agent shall lend all reasonable assistance to Insurer in investigating, adjusting or contesting said claim. Unless expressly authorized by Insurer, Agent shall not administer any claim, nor make any attempt to investigate, accept or deny responsibility, settle or refer the claim to outside counsel. Agent shall make any file documents necessary to administer such claim available to Insurer.

## X. INSURANCE

Agent shall immediately obtain and keep in full force and effect during the term of this contract a liability insurance policy for errors and omissions in an amount of at least $ 500,000.00 issued by a company acceptable to Insurer and furnish to Insurer a copy of the policy and a copy of proof of payment of the current premium. This liability policy may have a deductible of no more than $ 5,000.00 per loss.

Insurer may require Agent to provide satisfactory evidence of compliance with this provision.

## XI. AUDITS AND CREDIT INVESTIGATIONS

Agent hereby agrees and authorizes Insurer to conduct, at Insurer's option:

A.  Periodic audits of Agent's policy inventory, title insurance files and any material, files, records or accounts, including financial and business records, relating to the issuance of title insurance forms. In addition, although it is agreed that any escrow or settlement business responsibility is strictly that of Agent, it is recognized that because the Insurer issues insured closing services letter which cause Insurer to indemnify third parties against loss resulting from Agent's errors, omissions or misconduct (and for which Agent acknowledges total liability), Agent does hereby grant Insurer the right at any reasonable time or times to audit all financial and business records relating to any escrow closing or settlement functions conducted by Agent.

B.  Periodic credit reports of agent, as well as investigations relative to the business, professional and personal reputation, character, personal characteristics and mode of living of Agent. These matters may include matters in the nature of an investigative consumer report as defined by the Federal Fair Credit Reporting Act.

## XII. TERMINATION OF AGREEMENT

A.  Either party hereto may cancel this agreement by the giving of 30 days written notice of cancellation by registered or certified mail to other party. Such written notice to Insurer shall be addressed to Insurer at 6000 Lake Forrest Drive, Suite 375, Atlanta, Georgia 30328-3896 . Such written notice to Agent shall be sent to the last known business address of the Agent.

B.  In the event of a material breach of this agreement by either party hereto, the other party may terminate this agreement effective immediately by giving notice to the party committing such breach. Material breach on the part of the Agent includes, but is not limited to, material deviation from any directive promulgated by the Insurer and furnished to Agent, failure to pay promptly when due amounts due Insurer, failure to report promptly when due title insurance forms issued or a shortage in Agent's accounts of funds entrusted to Agent by Insurer or others.

C.  If during the term of this agreement, because of death or disability, or for any other reason, Agent is unable to carry

DCS

on the business of issuing Insurer's title insurance forms, or if there is a substantial change in the management or ownership of Agent's business, Insurer may cancel this agreement by giving thirty (30) days written notice to Agent.

D.    In the event of termination, Agent shall at once furnish to Insurer a complete accounting of all remittances due hereunder and of all commitments, policies and endorsements furnished by Insurer to Agent and deliver to Insurer all forms and all files kept pursuant to Paragraph IIIB above relating to commitments and policies of Insurer.  Upon termination, Insurer shall have the right of unrestricted access to all files kept pursuant to Paragraph IIIB.

## XIII. VALIDATING OFFICERS

See Exhibit "A" attached hereto.

## XIV. WAIVER AND FUTURE COMPLIANCE

A waiver of any provision of this agreement by Insurer or Agent shall not be construed to be a waiver of compliance with such provision in the future.

## XV. ASSIGNMENT

This agreement is not assignable, except upon written consent of the parties hereto.  This agreement, however, is binding on and inures to the benefit of any corporate successor of Insurer.

IN WITNESS WHEREOF, the parties hereto have caused this instrument to be executed on the day and year above written.

MOORE & STUDSTILL, PC
AGENT:

By: _____ Pres.
    Mitchell O. Moore

By: _____
    Daniel L. Studstill

OLD REPUBLIC NATIONAL TITLE INSURANCE COMPANY

By: _____
    Walter E. Davis

Its: ___Vice President_____

EXHIBIT "*" TO AGREEMENT FOR APPOINTMENT OF POLICY ISSUING AGENT

Set forth below are the Validating Officers of Agent # A 10035 :

Name: Mitchell O. Moore
Title:
_____
(Sample Signature)

Name: Daniel L. Studstill
Title:
_____
(Sample Signature)

Name:
Title:
_____
(Sample Signature)

Name:
Title:
_____
(Sample Signature)

Name:
Title:
_____
(Sample Signature)

Name:
Title:
_____
(Sample Signature)

Name:
Title:
_____
(Sample Signature)

Name:
Title:
_____
(Sample Signature)

Name:
Title:
_____
(Sample Signature)

Name:
Title:
_____
(Sample Signature)

MOORE & STUDSTILL, PC

Agent

By: _____       Date: 8-11-93
    Mitchell O. Moore
Its: President

By: _____       Date: 8-11-93
    Daniel L. Studstill
Its:

Insurer

By: _____       Date: 8-9-93
    Walter E. Davis
Its: Vice President